1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPHER G. MILLER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 13-cv-05698 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 12, 13, 14).

After considering and reviewing the record, the Court finds that the ALJ appropriately evaluated the medical evidence in order to resolve conflicts in the medical

evidence and issues of credibility. The ALJ failed to credit fully plaintiff's allegations and found, instead, that plaintiff lacked motivation. Although it is not the only possible interpretation of the evidence, the ALJ's interpretation of the evidence is a valid interpretation, supported by substantial evidence in the record as a whole.

Therefore, this matter is **AFFIRMED**.

## BACKGROUND

Plaintiff, CHRISTOPHER G. MILLER, was born in 1990 and was 19 years old on the alleged date of disability onset of November 30, 2009 (*see* Tr. 161-64). Plaintiff dropped out of school in the tenth grade (Tr. 49) and has never worked (Tr. 53).

According to the ALJ. plaintiff has at least the severe impairments of "major depressive disorder and schizoid personality disorder (20 CFR 416.920(c))" (Tr. 21).

At the time of the hearing, plaintiff was living at home with his mother (Tr. 62).

## PROCEDURAL HISTORY

Following plaintiff's application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act (*see* Tr. 161-64, *see also* Tr. 102-09, 113-118), his requested hearing was held before Administrative Law Judge David Johnson ("the ALJ") on October 20, 2011 (*see* Tr. 39-98). On November 10, 2011, the ALJ issued a written decision, in which he concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 16-38).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ improperly rejected the opinions of every examining physician of record; (2) Whether or not the ALJ erred in finding plaintiff's condition non-severe; (3) Whether or

not the ALJ failed to provide "clear and convincing" reasons for rejecting plaintiff's testimony; (4) Whether or not the ALJ failed to provide "germane" reasons for rejecting lay testimony; and (5) Whether or not the ALJ failed to meet his burden of showing that plaintiff was disabled at step five of the sequential disability evaluation process (*see* ECF No. 12, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1)   Whether or not the ALJ improperly rejected the opinions of every examining physician of record.**

Plaintiff complains because the ALJ rejected the opinions of four examining psychological doctors in favor of opinions from non-examining medical consultants.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the

record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A. Dr. Christmas Covell, Ph.D., examining psychologist

The ALJ gave some weight to certain aspects of the opinion of Dr. Covell (*see* Tr. 30). However, the ALJ did not give weight to Dr. Covell's opinion that plaintiff "would have marked to severe limitations in his ability to persist over time and marked limitations in social functioning" (*see id.*). The ALJ reasoned as follows:

> This is not consistent with her findings on the mental status exam that the claimant was only 'mildly distractible,' completed serial sevens and spelled a simple word forward and backward. Nor is it consistent with her observations that the claimant had normal yet underproductive speech, that he had only 'some difficulty' expressing thoughts and feelings, that his thought processes were logical and oriented, with no bizarre or delusional content, that he occasionally laughed and smiled at appropriate times and that he had no significant difficulties in nonverbal communication and social reciprocity (internal citation to Exhibit 7F/5-6).

(Tr. 30 (*citing* Tr. 358-59)).

The factual evidence listed by the ALJ is supported by substantial evidence in the record, as these MSE results and observations are in plaintiff's medical record from his evaluation with Dr. Covell (*see* Tr. 358-59). In addition, the ALJ's finding that some of Dr. Covell's opinions are not consistent with Dr. Covell's findings or observations on

<021><022><023><024><025><026><027><028><029><030>
<031><032><033><034><035><036><037><038><039><040>

mental status examination is a finding supported by substantial evidence in the record (*see id.*). Therefore, the ALJ's rejection of these opinions from Dr. Covell is not legal error.

B.  Dr. Dana Harmon, Ph.D., examining psychologist

The ALJ failed to credit fully the opinions of Dr. Harmon in part on the finding that Dr. Harmon's opinion regarding social functioning was based on plaintiff's subjective report (*see* Tr. 31). Although plaintiff contends that no evidence supports the ALJ's finding, the ALJ provided an example, "such as the claimant's report of lack of pleasure and enjoyment, little interest in other people or things, and sleeping most of the day" (*see id.*). Substantial evidence supports the ALJ's finding, because in the section regarding plaintiff's degree of limitation in social factors, Dr. Harmon including the following notation:

> [Plaintiff] presented as withdrawn and somewhat depressed. When asked about his normal mood, he replied: "I don't really feel much of anything . . . . Sort of gray or dull." [Plaintiff] had a Beck Depression Inventory score of 27, which is associated with "moderate/severe" levels of depression and emotional distress. He reported having the most difficulty with a lack of pleasure and enjoyment, little interest in other people or things, sleeping most of the day, poor concentration, and fatigue.

(Tr. 367). The Court notes that the Beck Depression Inventory (BDI-II) is a psychological test in which in the client or patient answers a series of subjective questions (*see* Tr. 373-74). The Court also notes that a review of Dr. Harmon's opinion indicates explicit reliance on plaintiff's subjective reports (*see* Tr. 367).

Based on a review of the record as a whole and for the stated reasons, the Court concludes that the ALJ's finding that Dr. Harmon's opinion regarding plaintiff's social

functioning was based largely on plaintiff's subjective reports is a finding based on substantial evidence in the record as a whole. The Court also concludes that the ALJ provided specific and legitimate rationale for failing to credit fully the opinions of Dr. Harmon. When discussing Dr. Harmon's opinion, the ALJ found insufficient evidence that plaintiff's alleged symptoms are attributable to a clinical cause and noted that evidence exists demonstrating otherwise (*see id.*).

It is clear that the ALJ has resolved conflicting evidence between two interpretations of the record, both with some support in the record as a whole: (1) that plaintiff's mental health impairments caused the symptoms alleged, verses (2) that plaintiff's lack of motivation not resulting from mental impairment is the precipitating cause of any extraordinary amount of sleep, any lack of interest in other people or things, or other alleged disabling symptoms. As noted elsewhere in the ALJ's written decision: "As evident from the claimant's statements and testimony, as well as that of his mother, the claimant is able to concentrate, focus, and persist when interested in the activity he is doing, such as video games or television" (*see* Tr. 29). Although plaintiff's mother indicated that plaintiff's focus on gaming "comes and goes," she also testified that "he'll get into a game and he'll sit in front of it for two or three hours" (Tr. 68). In this context, the ALJ also noted that "claimant's mother testified that the claimant refused to attend family events and pretended he was sick" (*see* Tr. 29), another finding supported by substantial evidence in the record (*see* Tr. 71 ("He doesn't even go to family events, he'll pretend he's sick")).

Finally, the ALJ noted evidence from Dr. Harmon's performance of a mental status examination demonstrating plaintiff's cooperative behavior and fair concentration, judgment and insight. For the stated reasons, the Court finds no error in the ALJ's assessment of the opinion of Dr. Harmon.

C.  Dr. Sara Minor, Ph.D., examining psychologist

In part, the ALJ failed to credit fully the opinions of Dr. Minor on the basis that they are conclusory and not specific functional assessments; and are inconsistent with the claimant's capabilities demonstrated elsewhere in the record (*see* Tr. 31-32). These findings are supported by the record and substantiate specific and legitimate reasons for failing to credit fully Dr. Minor's opinions. The ALJ included the following discussion in his written decision:

> Ms. Correa referred the claimant to Sara Minor, PhD, for psychological testing. However, because the claimant failed to keep many testing and feedback appointments, Dr. Minor was unable to report the test results until a year later in June 2010 (internal citation to Exhibit 12 F/1).
>
> In June 2010, when Dr. Minor was able to complete psychological testing of the claimant, she noted that the claimant's verbal and nonverbal intellectual abilities were firmly in the average range and his scores in working memory were in the high average range (internal citation to Exhibit 12 F/2; *see also* Exhibit 2F/3). She also stated that he presents some challenges to diagnoses. She opined that he may have an underlying thought disorder and that he is at high risk for developing full – blown psychotic episode in the future. She recommended that the claimant accept referral to psychiatry and discussed the possibility of antipsychotic medications (internal citation to Exhibit 4F/10 and Exhibit 12 F/1). Dr. Minor opined that at his current level of functioning, the claimant would not be successful in school or job. She opined that his condition would be chronic and need to be managed with medication to give him his highest level of functioning (internal citation to Exhibit 12 F/3). When the claimant was asked by Dr. Minor what might motivate him to go to school, the claimant responded "if his mother threatened to

> make him move." However, he felt strongly that his mother would always let him live with her, even if he was not doing anything (internal citation to Exhibit 12 F/1). She reported that the claimant has no interest in working or earning money and is fairly content having his mother support him (internal citation to Exhibit 12 F/2). He also told her that he plays video games, sports, and hide and seek at night with other peers (internal citation to Exhibit 12 F/2).
> . . . .
> As stated above, on June 10, 2010, Dr. Minor opined that at claimant's current level of functioning, the claimant would not be successful in school or a job. She opined that his condition be chronic, and would need to be managed with medication to given's highest level of functioning. . . . . These opinions are given little weight. They are not particularly helpful because they are conclusory, do not provide a functional assessment of the claimant's capabilities, appear be based to a great extent on the claimant's unreliable subjective claims, or inconsistent with the claimant's capabilities demonstrated elsewhere in the record . . .

(Tr. 26-27, 31-32).

The Court notes that Dr. Minor's opinions regarding plaintiff's ability to be successful at work or at school, may have a psychotic break in the future, and that medication is required for optimum functionality are conclusory and nonspecific regarding plaintiff's particular functional limitations (*see* Tr. 31, 400). Therefore the ALJ's finding on this point is supported by substantial evidence in the record.

Based on the relevant record, the Court concludes that the ALJ provided specific and legitimate reasons for failing to credit fully the opinion of examining doctor, Dr. Minor.

D.  Dr. Janis L. Lewis, Ph.D., examining psychologist

The ALJ discussed the May 29, 2009, evaluation from Dr. Lewis, noting that Dr. Lewis evaluated plaintiff for DSHS benefits and that she opined that plaintiff "does not

have empathy, [and] that he is emotionally detached and indifferent to praise and criticism" (*see* Tr. 26; *see also* Tr. 251). The ALJ gave little weight to some of Dr. Lewis's opinions, such as that plaintiff would have marked limitations in the ability to exercise judgment and make decisions, as well as in areas of social functioning (*see* Tr. 31). In part, the ALJ failed to credit fully Lewis's opinions because the ALJ found that Dr. Lewis's opinion relies heavily on plaintiff's subjective report (*see id.*).

The ALJ's finding that Dr. Lewis's opinion relies heavily on plaintiff's subjective report is based on substantial evidence in the record as a whole. For example, when rendering her opinion regarded marked limitations with respect to social functioning, Dr. Lewis noted that plaintiff reported not having any close friends "ever;" that he does not do any social networking; that he has angry fantasies; that he especially hates being interrupted; that he never has lived independently; and Dr. Lewis included a note in her report in quotation marks: "I don't care" (*see* Tr. 251). When evaluating plaintiff's cognitive factors such as his ability to exercise judgment and make decisions, Dr. Lewis indicated plaintiff's report that "I remember places more than people," although Dr. Lewis also noted multiple objective results from plaintiff's mental status examination (*see id.*).

The ALJ also noted that "in contrast to what [plaintiff] told Dr. Lewis, less than one month later he denied 'violent fantasies' and reported that he had been socializing" (Tr. 31 (internal citation to 4F/8)). The Court already has noted plaintiff's report to Dr. Lewis that he has angry fantasies (*see* Tr. 251), and notes that to Ms. Diane Correa, MA, LMHC, plaintiff reported no violent fantasies "ever" (*see* Tr. 336). Thus, the ALJ has

provided an additional reason supporting his determination not to credit fully the opinions of Dr. Lewis. The Court finds no error.

Plaintiff complains that the ALJ erred by relying on the opinions from the nonexamining medical consultants, however plaintiff's contention that the medical consultants opinions were internally inconsistent is not persuasive (*see* Opening brief, ECF No. 12, pp. 14-16). Simply because Dr. Peterson noted other opinions from the record in her own report, does not indicate that those opinions were the opinions of Dr. Peterson, as argued by plaintiff. In addition, the fact that the opinions are contradicted by the opinions from examining doctors does not render the ALJ's reliance on them erroneous: the ALJ provided specific and legitimate reasons for resolving the conflicting medical evidence. In addition, contrary to plaintiff's argument, the opinions of the nonexamining, medical consultants are consistent with other independent evidence of record, such as lack of medication; plaintiff's testimony regarding his interactions with others, including playing sports, video games and "hide and seek"; and his mental status examination results, including his high average working memory, appropriate smiling, and no significant difficulties in nonverbal communication and social reciprocity, as noted by the ALJ (*see, e.g.,* Tr. 50, 358-59, 399).

Based on the relevant record and for the reasons stated above, the Court concludes that the ALJ did not commit harmful error during the evaluation of the medical evidence.

  (2) **Whether or not the ALJ erred in finding the plaintiff's condition non-severe**.

Plaintiff complains that the ALJ improperly concluded that plaintiff's back pain was not a severe impairment, noting that some providers indicated that plaintiff's low back pain resulted from his depression or mental health issues and that he was prescribed an antidepressant with the aim of relieving his back pain (*see* Opening Brief, ECF No. 12, pp. 16-18 (*citing* Tr. 316)).

Here, the ALJ included the following discussion regarding plaintiff's alleged back pain:

> The claimant also complained of back pain. However this is a non-severe impairment. On January 27, 2010, when the claimant saw Kathleen A. Leppig, M.D., for complaints of back pain. He reported no physical limitations and diagnostic testing was normal (internal citation to exhibit 5F/1-4). When he saw Natalya Z. Warner, M. D., at group health on June 9, 2010, she stated that when he was examined in October of 2009, x-rays of the sacroiliac joints and lumbar spine were unremarkable, that there was no evidence of seronegative spondyloarthropathy, and that the claimant's back pain was not inflammatory in nature (internal citation to Exhibit 13 F/15). On June 9, 2010, the claimant had negative clinical findings in the SI joints, normal x-rays and normal inflammatory markers. Dr. Warner diagnosed the claimant with 'questionable undifferentiated seronegative spondyloarthropathy with possible component of somatization' (internal citation to Exhibit 13 F/16). On March 29, 2011, an MRI of the pelvis was normal, the claimant had no sacroiliitis and he had normal hip joints (internal citation to Exhibit 21F/20). An MRI of the lumbar spine revealed mild degenerative disc disease at L3 – L4, no central canal narrowing, no foraminal narrowing and no compression fracture (internal citation to Exhibit 21F/21). Further, on April 19, 2011, Zhiqian Wang, M.D., would not consider any aggressive treatment for the claimant's back pain (internal citation to Exhibit 21F/4). The claimant testified that he does not take any medications for his back pain. As there is insufficient evidence that the claimant's back pain causes more than minimal limitations in his ability to engage in work-related activities, it is considered nonsevere.

(Tr. 21-22).

1    The Court concludes that the ALJ's discussion regarding plaintiff's alleged back
2  pain is supported by substantial evidence in the record, as all of the ALJ's noted findings
3  are in plaintiff's treatment record. Although plaintiff suggests a different interpretation of
4  the evidence, the ALJs interpretation of the evidence is supported by substantial evidence
5  in the record as a whole. Although plaintiff notes a couple of findings in the record not
6  noted by the ALJ, such as a finding of paraspinal atrophy, the ALJ's failure to note this
7  specific evidence does not render his finding regarding plaintiff's back pain erroneous,
8  and, is at most harmless error.
9    The Ninth Circuit has "recognized that harmless error principles apply in the
10 Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)
11 (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th
12 Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the
13 record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court
14 also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error
15 is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.*
16 (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008))
17 (other citations omitted). The court noted the necessity to follow the rule that courts must
18 review cases "'without regard to errors' that do not affect the parties' 'substantial
19 rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28
20 U.S.C. § 2111) (codification of the harmless error rule)).

Based on a review of the record as a whole, the Court concludes that the ALJ did not commit harmful legal error at step two of the sequential disability evaluation process by failing to find that plaintiff's alleged back pain was a severe impairment.

(3) **Whether or not the ALJ failed to provide "clear and convincing" reasons for rejecting the plaintiff's testimony**.

Plaintiff complains that the ALJ failed to provide legally sufficient reasons for failing to credit fully plaintiff's credibility and testimony however the ALJ provided numerous valid reasons supporting his failure to credit fully plaintiff's allegations, including inconsistency with the objective medical evidence, as well as inconsistencies in plaintiff's testimony between his demeanor on direct examination versus on cross examination.

The Court concludes that the ALJ's finding that the objective medical evidence is inconsistent with the degree of limitation alleged by plaintiff is based on substantial evidence in the record as a whole. Much of the objective medical evidence in support of this finding by the ALJ has been discussed already by the Court, *see supra*, sections 1 and 2, such as the discussion regarding plaintiff's alleged back pain, and the objective findings on mental status examination with Dr. Covell that plaintiff was "only 'mildly distractible,' completed serial sevens and spelled a simple word forward and backward," that plaintiff "had normal yet underproductive speech; that he had only 'some difficulty' expressing thoughts and feelings, that his thought processes were logical and oriented, with no bizarre or delusional content, that he occasionally laughed and smiled at appropriate times and that he had no significant difficulties in nonverbal communication

and social reciprocity (internal citation to Exhibit 7F/5-6)" (Tr. 30). The ALJ also noted that plaintiff testified that he stated that he speaks with others, games with others, and play sports and that at his hearing, he "testified that he is currently on no medication" (Tr. 24; *see also* Tr. 241 (indicating no medications)).

In addition to rely on inconsistency with the medical evidence, the ALJ also relied on his observations during the hearing testimony with plaintiff as follows:

> [Plaintiff] testified that his memory is difficult when he is asked questions. In response to many questions he responded slowly and with vague statements such as "I can't remember," "don't know," "I suppose," "sort of," and "not sure." During his testimony, he smiled and quietly laughed at some of his answers. He said he dropped out of high school in the 10th grade because he did not see much of a point in going. When he dropped out, he spent his days watching T.V., playing video games, reading, and hanging out with family. He testified that he helped his grandmother in her craft business for "a while." He said he filled bottles with glitter, but he could not remember when this occurred or for how long he did this. When asked why he could not work, the claimant testified that he has a lack of caring or seeing the point. He also stated he does not entirely get along with others as most people do. He also said his back pain was a "bit" of a problem. Claimant said he never received medications for his back pain because it was not necessary that his back function, and they were waiting to see what happened with his back. When asked if he was exercising he stated "not a lot". He said he tried to get into the habit, but stop caring and then stop exercising (sic). The claimant was much more forthcoming with his answers when his representative asked leading questions. He quickly answered "yes" to questions such as whether it was a number of years ago when he played Diablo, whether he had difficulty staying on task, whether his tendencies had gotten worse over the last couple years, whether he had trouble focusing when people talk to him, and whether his reading has declined over past couple of years. When his representative asked if he had managed to stick with videogames very long he quickly responded "no."

(Tr. 29).

1    The Court concludes that the ALJ's finding that "the claimant's manner of
2    testifying at the hearing undermined his credibility" is supported by substantial evidence
3    in the record as a whole (*see* Tr. 29). The ALJ found that in the testimony quoted herein,
4    plaintiff was "vague and evasive, and stated he could not remember when I asked him
5    open-ended questions; [h]owever, when he was asked leading questions by his
6    representative he had no problem with answering" (*id.*). This finding and the ALJ's
7    implication is supported by substantial evidence in the record.
8    The ALJ also failed to accept plaintiff's potential explanation for this discrepancy,
9    noting that although plaintiff alleged memory problems, "this is inconsistent with the
10   medical evidence, which does not support the level of memory problems that he claims"
11   (*id.*). The ALJ provided examples: "when Dr. Covell examined the claimant, he had only
12   minor difficulty recalling details, dates and time frames of events in his personal history,
13   but his remote memory was grossly intact and his immediate and delayed memory
14   functioning were average; He was able to recall three items in a list immediately and after
15   brief period of distraction and delay (*id.* (*citing* Tr. 359)); the most recent medical
16   evidence shows that he has only mild impairment in memory" (*id.* (*citing* Tr. 477-78)).
17   These examples provided by the ALJ are supported by substantial evidence in the record
18   as a whole, because the ALJ's discussion accurately reflects the medical record (*see, e.g.*,
19   Tr. 359, 477-78). The Court also notes that other evidence from the medical evidence
20   supports the ALJ's finding (*see, e.g.*, Tr. 249 (no impairment in ability to remember
21   simple instructions); Tr. 254 (immediate memory 3/3, after five minute delay 2/3); Tr.

366 (remote memory: "intact"); Tr. 399 ("His scores in working memory are actually in the high average range")).

The Court concludes that the ALJ's finding that plaintiff's testimony unreasonably varied between direct and cross examination is based on substantial evidence in the record as a whole. The Court also concludes that this reasoning provides some support for the ALJs credibility determination.

Based on the record as a whole and for the reasons stated the Court concludes that the ALJ did not commit harmful error in his evaluation of plaintiff's credibility, and that his findings are based on substantial evidence in the record as a whole.

(4) **Whether or not the ALJ failed to provide "germane" reasons for rejecting lay testimony.**

In this matter, plaintiff's mother offered a lay opinion. Plaintiff complains that the ALJ failed to provide germane reasons for rejecting her opinion; however, the Court concludes that the ALJ's analysis was proper.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence

provided by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Here, the ALJ provided the following discussion regarding the lay opinion of plaintiff's mother:

> I also find that the testimony of Rachel DeVore, the claimant's mother, is inconsistent with and not supported by the medical evidence and bolsters the impression that the claimant's lack of functioning at home is not attributable to clinical causes, but is more related to his knowledge that his mother would continue to support him. For example, Ms. DeVore testified that the claimant drifted off during conversation and would have to ask her to repeat what she said. She testified that the claimant did not have the focus to read anymore. However, Dr. Covell found that the claimant was only mildly distractible. The claimant was able to complete serial sevens and spell a simple word forward and backward. He was able to follow simple written and oral commands, repeat a phrase, name objects and produce a simple written sentence. He was able to copy a figure accurately (internal citation to Exhibit 7F/6). The most recent medical records show the claimant had only a moderate impairment concentration as demonstrated by his latent responses (internal citation to Exhibit 20 F/23-24). Thus, her testimony reflects the claimant's chosen behavior, rather than reflecting limitations caused by medically determinable impairments.

(Tr. 29).

The ALJ pointed out a specific inconsistency between the testimony of plaintiff's mother and the opinion of examining psychological doctor, Dr. Covell (*see id.*). This finding alone provides a germane reason for the ALJ's failure to credit fully the lay opinion of plaintiff's mother. The Court finds no harmful error.

//

(5) **Whether or not the ALJ failed to meet his burden of showing that plaintiff was disabled at step five of the sequential evaluation process**.

Plaintiff has not raised any additional arguments in support of his final argument that the step five determination was in error.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 16th day of June, 2014.

J. Richard Creatura
United States Magistrate Judge